**UNITED STATES of America,**
**Plaintiff,**

v.

**Joseph Thomas GOLDEN, also known as**
**Anthony M. Del Parma, Defendant.**

United States District Court
S. D. New York.
Oct. 23, 1958.

Arthur H. Christy, U. S. Atty., for Southern Dist. of New York, New York City, by Mark F. Hughes, Jr., Asst. U. S. Atty., New York City, for United States.

Joseph Leary Delaney, New York City, for defendant.

LUMBARD, Circuit Judge.

The defendant Golden was tried, upon his waiver, without a jury for violation of the Dyer Act, 18 U.S.C. § 2312 (1952), in that he

> "Unlawfully, willfully and knowingly did transport in interstate commerce from Newark, New Jersey to New York, New York, a motor vehicle * * * knowing the same to have been stolen."

By his waiver of jury trial the defendant has left to the court the question of whether his renting a Ford car from the Hertz Corporation in New Jersey on the credit of his Diners Club membership and thereafter driving the car to New York and abandoning it in a public garage constitute a violation of the Act. To secure conviction the prosecution must establish beyond a reasonable doubt that the defendant (1) transported the car in interstate commerce; (2) that it was a stolen car; and (3) that the defendant knew it to be stolen. On the undisputed facts developed at the trial held on September 15, 1958, I find the defendant not guilty.

On Saturday, August 17, 1957, the defendant went to the Newark office of the Hertz Corporation, a company in the business of providing automobiles for

hire, and rented a 1957 Fairlane model Ford for one week. In answer to questions of the Hertz representative, Golden stated that he did not intend to take the car out of the state. The clerk recorded on the printed form of the Hertz Corporation that the rental was to be charged and invoice mailed to the Diners Club at 350 Fifth Avenue, New York. N. Y. It is undisputed that Golden displayed a valid Diners Club credit card, then colored orange, which stated on its face that it expired at the end of September 1957.

Golden then drove several friends to Atlantic City, N. J. where they stayed for the weekend, after which they drove to New York City. Golden testified that he continued his use of the Diners Club card until sometime early in September when he exhibited the card in order to pay for a dinner at Patsy's Restaurant in New York City and the cashier told him that his credit card had "expired." He says that it was after this that he put the car in the Urban Garage in New York City on September 10. The car remained there unclaimed until New York City police notified the F.B.I. about October 2. Golden had left the Hertz registration and the rental contract in the glove compartment of the Ford which was returned to Hertz in an undamaged condition. There is nothing in the record to dispute the defendant's assertion that after his rebuff at Patsy's Restaurant he made no further attempt to use his Diners Club card. When the car was returned, the Hertz Corporation billed the Diners Club for $422.35 to cover its standard charges for the use of the car from August 17 to October 2 the date of its recovery. It was stated by counsel that Hertz is presently litigating this claim against the Diners Club.

On April 9, 1957 Golden first secured a Diners Club card as "Anthony Del Parma" in San Francisco where he was then resident and where he had been employed as Del Parma for several years. Thereafter on 68 occasions from April 19 to September 2, 1957, he used the card at various places in California, Miami Beach, Havana, Atlantic City and New York City and, together with the charge for the Ford rental here in question, he thus accumulated an indebtedness of approximately $3,000, all of which has remained unpaid. Golden testified that he means to pay these bills, but the record leaves too much to be explained on that score and I have no doubt that Golden never had any intention to pay any of these charges at the time he incurred them.

Meanwhile Golden was employed in New York City until about January 10, 1958, when he flew to Cuba and took employment at a Havana hotel. On about February 20, 1958 he was arrested by the Cuban police and informed that he was wanted by the American authorities. In fact a warrant had been issued for his arrest on the instant charge on October 29, 1957. Although the Cuban police placed the defendant on board a plane bound for the United States it was unable to depart because of mechanical difficulties. The defendant, finding that the Cuban police had left the airport, went to the home of a friend in Havana and cut and dyed his hair. He explains his use of this disguise as a means of avoiding the hostile—and to his mind dangerous—Cuban police. The government argues that he assumed the disguise to avoid arrest upon his return to the United States. In any event, it is undisputed that the defendant proceeded the following day by ferry to Key West, Florida, and thence by plane to New York City where he was arrested by agents of the Federal Bureau of Investigation on February 23. Upon his arrest he first clumsily denied his identity and then admitted it.

The government's argument rests on two assertions. The first of these is that the defendant gained possession of the car from Hertz by means of a fraudulent and felonious misrepresentation of his intention to pay for the hire; the second is that some time prior to the interstate transportation of the car the defendant intended to, and thereafter did, so wilfully and grievously violate the contractually authorized use of the car that his

acts constituted a felonious conversion. The government apparently urges that either of these wrongs constitutes a theft within the meaning of the Act, and that in any event they do so in combination. I cannot agree.

In support of both of its assertions, the government cites United States v. Turley, 1957, 352 U.S. 407, 77 S.Ct. 397, 399, 1 L.Ed.2d 430.[1] Although that case makes it plain that the word "stolen" in the Dyer Act is not limited to common law larceny but extends to all felonious taking "with intent to deprive the owner of the rights and benefits of ownership," even this broad construction does not, in my opinion, reach the means by which Golden got possession of the Ford from Hertz.

■ It may be that the defendant intended to rent cars, eat meals and generally live a golden life at the expense of the Diners Club. But even if the credit of the Diners Club was fraudulently obtained, it does not support a finding that the car obtained on that credit was obtained "with intent to deprive the *owner* of the rights and benefits of ownership." United States v. Turley, supra, 352 U.S. at page 408, 77 S.Ct. at page 399. (Emphasis added.) Had the defendant obtained a loan in cash and paid Hertz, the fact that the loan was obtained by fraud would not sustain a conviction under the Act. In my opinion the use of the Diners Club card to obtain the Ford car at a time when the card had not expired and when it was still good, so far as the record shows, presents precisely the same situation.

Had the defendant used a card which he had reason to believe had been cancelled, or after notice to him that his credit had been revoked, this together with other factors, might well alter the result. But that is not this case. There is here a considerable gap in the proof

as to when the card was revoked and what the defendant knew about it but as the burden is on the government to prove the charge beyond a reasonable doubt, the court may not substitute suspicion for proof which is lacking.

A more difficult question is presented by the contention that when the car was obtained, or at any rate before its interstate transportation, the defendant had formed the intention to convert it to his own use in defiance of the permission given, which, coupled with his subsequent acts, constituted a felonious taking within the meaning of the Act as construed in United States v. Turley, supra.

■ Obviously embezzlement of a car is now punishable under the Act, United States v. Turley, supra. But it is plain that not all breaches of permission are felonious, and that the return of the car though not necessarily exculpatory is not irrelevant to guilt. Here the defendant did not sell or injure the car. His supposed violations of the contract are three in number: (1) he took the car out of New Jersey, though he had said he did not intend to; (2) he kept the car out of Hertz's possession for seven weeks, though he had agreed to return it at the end of one week; and (3) he did not himself see to the actual return of the car to Hertz. While he kept it overtime this apparently was quite agreeable to Hertz so long as it is paid at the customary rental rate.

■ Whether a breach of permission which creates civil liability is sufficiently serious to support a finding of felonious intent arising at the time of or after the acquisition of possession is to be tested by the scope of the permission which has been granted. Here the permission was granted by the standard commercial contract of a company in the business of renting cars; it was virtually unrestricted in terms, and provided for standard

1. Although there are many decisions regarding the taking of automobiles under the Dyer Act, we have not found or been referred to any case presenting the specific question of the effect of the use of credit fraudulently obtained from a third party.

weekly and daily rates and mileage charges for the use of the vehicle.

Even if I were to assume that the government has proved that Golden had, in advance of crossing state lines, the intention to do all that he thereafter did do, I cannot find that this intent was felonious. In commercial dealings such as these Golden could reasonably assume that .delayed return or out-of-state use would be permitted upon the mere payment of an additional fee, and his taking the car out of New Jersey and not returning it within one week is not adequate evidence of the felonious intent necessary to support a conviction under the Act. That he allowed charges to be amassed at the Urban Garage prior to the return of the car to Hertz is irrelevant. Had the permission been gratuitous, and had it been granted for a limited purpose, minor deviations would be far more significant evidence of felonious intent, since it would then more readily be found that the taker knew he was violating the permission and did so wilfully, and since the deviations themselves would then constitute more serious deprivations of the owner's "rights and benefits of ownership." But that is not the present case.

What I have said disposes of the government's contention that Golden's two prior rentals of Hertz cars without payment to the Diners Club were prior similar acts from which his intent can be inferred. If anything, those rentals and the return of the cars, would seem to be further proof that Golden expected that here too the Diners Club would pick up the check.

There remains only the matter of the evidence relating to Golden's "disguise" assumed for his return from Cuba which the government urges as consciousness of guilt. This may go to Golden's intention to defraud, but it hardly touches the question whether Golden meant to defraud Hertz rather than the Diners Club. Whatever Golden's liability may be in civil damages or state criminal proceedings, I must conclude that he is not guilty of violating the Dyer Act, as charged by the indictment.