UNITED STATES of America,
Appellee,

v.

Edwin Ray BRUTON, Jr., Appellant.

UNITED STATES of America,
Appellee,

v.

Robert S. JEAN, Appellant.

Nos. 19525, 19526.

United States Court of Appeals
Eighth Circuit.

Aug. 6, 1969.

R. Neil Rucksdashel, Lincoln, Neb., for appellants.

Duane L. Nelson, Asst. U. S. Atty., Omaha, Neb., for appellee; Richard A. Dier, U. S. Atty., with him on the brief.

Before BLACKMUN, MEHAFFY and LAY, Circuit Judges.

MEHAFFY, Circuit Judge.

Defendants Edwin Ray Bruton, Jr. and Robert S. Jean were separately charged in one-count informations with violating the Dyer Act. 18 U.S.C.A. § 2312, by transporting in interstate commerce from Georgia to Nebraska a stolen automobile knowing it to have been stolen.[1] The cases were consolidated for trial, and upon verdicts of guilty rendered by the jury against each defendant the trial court adjudged them to be youth offenders and suspended imposition of sentence of imprisonment and placed them on probation for three years.

Defendants were permitted to appeal in forma pauperis. The main thrust of their contention for reversal is that the evidence is insufficient to support the verdicts. Additionally, they assign as error the refusal to give two requested instructions and an objection to one of the instructions contained in the court's charge. We affirm the judgments of conviction.

Defendants were both in the Army stationed at Fort Gordon, Georgia, located on the outskirts of Augusta, Georgia. On April 13, 1968, defendants planned a trip to Urbana, Illinois so that Jean could see his wife and child. The two decided to rent a car to make the trip, but a telephone call to the National Car Rental Agency at Augusta disclosed that a car would not be rented to anyone under twenty-five years of age. Since both defendants were under twenty-five years old, they went to the home of Mrs. Rose Bruton in Augusta, the aunt of de-

1. 18 U.S.C.A. § 2312 provides:
"Whoever transports in interstate or foreign commerce a motor vehicle or aircraft, knowing the same to have been stolen, shall be fined not more than $5,000 or imprisoned not more than five years, or both."

fendant Bruton, whom they had visited on previous occasions, and persuaded her to rent a car for them. They knew at this time and at all times that they planned to take the car directly to Illinois, but nonetheless they told Mrs. Bruton that they wanted to attend a dance at Macon, Georgia and would return by three or four o'clock the next afternoon. Mrs. Bruton agreed to rent the car for them upon their assurance that they would return the next day and pay the rental fee. Shortly after three p. m. that same day the two defendants and Mrs. Bruton drove to the National Car Rental Agency at Bush Field in Augusta where they rented a 1968 Chevrolet Impala. Jean stayed outside in Mrs. Bruton's car while Bruton and his aunt went to the desk of the agency in the terminal building where Mrs. Bruton told the clerk in Bruton's presence that the car was only going to be used to go to Macon, Georgia and would be kept for one day.

This stipulation was entered in the contract of lease and Mrs. Bruton offered a cash deposit of $50.00, which defendant Jean had provided her. However, since she also was using her Shell Oil Company credit card as a deposit the clerk told her that it was not necessary to make the cash deposit. Defendants assured Mrs. Bruton that no charges would be made against her credit card for the car rental as they would pay for it upon their return.

Defendants and Mrs. Bruton then proceeded to Mrs. Bruton's house with both cars and defendants again assured her that they would return the next day by three or four p. m.

Upon leaving her house, defendants drove directly to Urbana, Illinois as they had originally planned. They stayed in Urbana for a day or two and then decided to drive to Cudahy, a suburb of Milwaukee, Wisconsin, where Jean had a friend they could stay with while looking for work since they did not have sufficient funds to return the car to Augusta. Being unable to find employment, they decided to drive to California. They left their Army clothes with Jean's friend. Defendants were absent without leave from the Army and completely without funds when they embarked on this leg of the journey. Both defendants affirmed earlier oral statements made to an FBI agent to the effect that they intended to turn the car in in California, and Jean acknowledged that he told the agent that they were broke and he did not know where, when and if the car would be turned in.

When defendants did not return to Augusta the day following the rental of the car Mrs. Bruton notified the car rental agency who advised that they were holding her responsible, and she then notified the police authorities in Georgia. A warrant for defendants' arrest was issued in Georgia. On April 19, 1968, defendants were stopped by Nebraska state patrol troopers about fourteen miles north of Beatrice, Nebraska on U.S. Highway 77. At first they refused to identify themselves, but a search of the car revealed Bruton's identification and a copy of the rental agreement.

Defendants, after being formally charged, appeared before the United States Commissioner with appointed counsel. They admitted there and also later to the FBI agent that they had agreed to misrepresent to Mrs. Bruton that they were going to Macon, Georgia so as to persuade her to lend her assistance in renting a car for them when they actually had no intention of going to Macon, but from the outset intended to immediately drive to Illinois.

Both defendants testified at trial substantially to the same effect. They both contended that they intended to return the car to the National Car Rental Agency in California. Bruton testified that he had friends in California who would loan him money to pay for the car, and both testified that they were not aware that their conduct was felonious under the circumstances.

As we said in Stewart v. United States, 395 F.2d 484, 490 (8th Cir. 1968):

"The interpretation of the Dyer Act has resulted in numerous decisions involving its reach, the definition of its terms, and, as a matter of fact, the definition of nearly every word contained therein. These decisions evidenced a divergence of views in the various circuit courts, which resulted in the granting of certiorari by the Supreme Court in the case of United States v. Turley, 352 U.S. 407, 77 S. Ct. 397, 1 L.Ed.2d 430 (1957), which involved an alleged violation of the Dyer Act. In interpreting the term 'stolen' as used in the statute, the Supreme Court there reviewed the legislative history of the Act and, noting the divergent decisions in the lower federal courts, held:

" 'We conclude that the Act requires an interpretation of "stolen" which does not limit it to situations which at common law would be considered larceny. The refinements of that crime are not related to the primary congressional purpose of eliminating the interstate traffic in unlawfully obtained motor vehicles. The Government's interpretation is neither unclear nor vague. "Stolen" as used in 18 U.S.C. § 2312 includes all felonious takings of motor vehicles with intent to deprive the owner of the rights and benefits of ownership, regardless of whether or not the theft constitutes common-law larceny.' "

Judge Blackmun, speaking for this court in Schwab v. United States, 327 F.2d 11, 13 (8th Cir. 1964), interpreted United States v. Turley, 352 U.S. 407, 77 S.Ct. 397, 1 L.Ed.2d 430 (1957), as standing for the proposition that the statute is violated with something less than permanency and something less than a deprival of the totality of ownership. We followed and quoted from Schwab, supra, in our later Stewart opinion. Actually, Stewart, supra, is closely factually analogous to the case at bar except for the utilization of the credit card.

The teaching of Turley has been consistently applied and followed by the courts of appeal and a number of the cases involve rental cars. Judge Haynsworth aptly summarized the scope of the Dyer Act in United States v. Dillinger, 341 F.2d 696, 697–698 (4th Cir. 1965), as follows:

"The word 'stolen' as used in the Dyer Act includes much more than common law larceny. It encompasses any taking with the intention to convert the vehicle to the use of the taker and wrongfully to deprive the owner of his possessory rights and the benefits of the ownership. Such a taking can occur, though possession is acquired by means of a rental agreement.

"Moreover, it is unnecessary that the defendant's intention be to deprive the owner of the use of the vehicle forever. It is enough that he did not intend to return the automobile, but intended to use it for his own purposes as long as it served his convenience and thereafter to abandon it or dispose of it.

"The defendant's intention, when he leased the automobile and when he first transported it in interstate commerce, can be shown by his subsequent conduct." (Footnotes omitted.)

In Jarvis v. United States, 312 F.2d 563 (9th Cir. 1963), the Ninth Circuit held that an embezzled car could be the basis of conviction under the Dyer Act, and it was likewise held in Berard v. United States, 309 F.2d 260 (9th Cir. 1962), that it was unnecessary for a conviction under the Act to establish that defendant intended to deprive the owner permanently of his rights and benefits of ownership. In United States v. Welborn, 322 F.2d 910 (4th Cir. 1963), the court held that the Dyer Act covers both larceny by trick where intent to steal is present at the time of rental, and embezzlement where intent to steal arises at some later time, so long as the automobile was subsequently

transported in interstate commerce. See also and compare Smith v. United States, 385 F.2d 252 (8th Cir. 1967); Dixon v. United States, 295 F.2d 396 (8th Cir. 1961); and Miller v. United States, 261 F.2d 546 (4th Cir. 1958).

Defendants rely principally on the district court opinion in United States v. Golden, 166 F.Supp. 799 (S.D.N.Y. 1958), in support of their contention that the evidence here does not suffice to constitute a violation of the Dyer Act. It is interesting to note that the Fourth Circuit has distinguished *Golden* in *Welborn, supra,* because in *Golden* the district court was the trier of the facts and determined the intent of the accused, whereas a reviewing court is bound by the findings of the trier of fact when supported by substantial evidence. See also and compare Bouchard v. United States, 344 F.2d 872 (9th Cir. 1965).

In the instant case, the jury found defendants did intend to deprive the owner of the rights and benefits of ownership, and we hold that there was sufficient evidence to justify this finding. We might add that if *Golden, supra,* is not distinguishable, with all due deference we disagree with the court's holding.

▪▪▪ Defendants here intended from the outset to obtain a car from National Car Rental Agency in order to drive to Urbana, Illinois, knowing full well that they could not return the car within the terms of the contract in a twenty-four hour period, and knowing further that they did not have the money to pay the rental charges on the car. They were motivated by a preconceived plan born of fraud and misrepresentation to deprive the owner of the possession of its automobile with specific intent of driving it to another state in violation of the Dyer Act. Furthermore, if it could be said that the car was obtained lawfully in the first instance, certainly when the defendants left Wisconsin and drove to Nebraska en route, so they say, to California at a time when they were penniless, their intent constituted embezzlement and a violation of the Act. It is no answer that the owner of the car was protected by the fact that a credit card was used in the procurement of the car and that either the holder or issuer of the credit card would be responsible for the rental and damage. Restitution from whatever source cannot act as a shield against prosecution or conviction for law violation. Anyone who steals is liable civilly but this no more insulates his criminal acts than restitution insulates the criminal act of an embezzler. The Supreme Court said in *Turley,* "* * * Congress presumably sought to meet the need for federal action effectively rather than to leave loopholes for wholesale evasion." 352 U.S. at 416–417, 77 S.Ct. at 402. Neither the misrepresentation to Mrs. Bruton, the use of her credit card nor any other gimmick affords defendants any protection for the crime they committed. The evidence is amply sufficient to support the jury's conclusion of intention to violate the Dyer Act.

Defendants also assign as error the failure to give two of their requested instructions. The said instructions are contrary to the law as enunciated in *Turley* and herein followed. We find from a survey of the entire charge that the court completely, fairly and properly instructed the jury on all aspects of the case.

Having found no reversible error, the judgments of conviction are affirmed.