James Barrett **KIMBALL**, Appellant,

v.

**UNITED STATES** of America,
Appellee.

No. 20380.

United States Court of Appeals,
Eighth Circuit.

Feb. 16, 1971.

Tom Riley, Cedar Rapids, Iowa, for appellant.

Evan L. Hultman, U. S. Atty., Robert L. Sikma, Asst. U. S. Atty., Sioux City, Iowa, for appellee.

Before MEHAFFY and HEANEY, Circuit Judges, and MEREDITH, District Judge.

HEANEY, Circuit Judge.

James Kimball appeals from a judgment of conviction entered by the United States District Court for the Northern District of Iowa. He was tried to a jury on a charge of transporting a stolen motor vehicle in interstate commerce in violation of 18 U.S.C. § 2312 and was found guilty. He asks that his conviction be set aside on two grounds: (1) the trial court abused its discretion in denying the defendant's pretrial motion for a continuance, and (2) the trial court erred in denying the defendant's motion to suppress evidence which the defendant contends was seized in violation of his Fourth Amendment rights. We affirm.

The appellant alleges that he was entitled to a continuance because the government transferred him out of the Northern District of Iowa shortly after his arraignment and did not return him to that District until a few days before his trial was scheduled to begin. He argues that this transfer prevented him from adequately preparing his case with local counsel.

The record shows that on November 19, 1969, the defendant was arrested in Waterloo, Iowa, for failure to appear in federal court in Danville, Illinois, on an unrelated charge. On December 2, he was ordered removed to the Western District of Oklahoma, where he was arraigned on other charges on January 29, 1970. On February 13, 1970, the federal grand jury for the Northern District of Iowa indicted the defendant on the present charge. On April 1, the defendant was returned from Oklahoma to Iowa to be arraigned. On April 3, he appeared in the Federal District Court for the Northern District of Iowa on the government's motion to have him returned to the Western District of Oklahoma to stand trial on the charges pending there. Counsel was appointed to represent him. The defendant opposed the removal and asked for a speedy trial on the Iowa charge. A hearing on the government's removal request and the defendant's request for an immediate trial was set for April 10. On that date, the court granted the government's motion, but stayed the defendant's removal for five days to permit further consultation between the defendant and his counsel. The defendant was arraigned on the same date, and a not guilty plea was entered by the court. Trial was set for May 18, 1970. On April 15, the defendant was removed to the Western District of Oklahoma. The defendant was returned to Iowa on May 12. On May 18, the defendant's attorney filed a motion for a continuance.

■ On the above facts, we find that the trial judge did not abuse his discretion in denying the defendant's motion for a continuance. While there is no adequate explanation in the record for the government's frequent transfers of the defendant from place to place, there is no showing that these transfers seriously interfered with the defense counsel's preparations. He had eighteen days for consultation with the defendant, and forty-four days within which to conduct an investigation. These periods were more than adequate to prepare for this uncomplicated trial. Stamps v. United States, 387 F.2d 993 (8th Cir. 1967); Ray v. United States, 197 F.2d 268 (8th Cir. 1952).

The prompt trial of criminal cases is vital to the public, to the courts and to the accused. In this case, the period between indictment and trial had already exceeded by thirty-three days the sixty-day span suggested as appropriate by the Chief Justice of the United States Supreme Court,[1] and was approaching the nine-week maximum between arraignment and trial recommended by the President's Commission on Law Enforcement and Administration of Justice.[2] Further delay in bringing this case to trial would have been questionable.

There is some evidence on the record from which defense counsel could have surmised that the defendant would not be returned to Iowa in time for trial on May 18, but a careful and constant check with the government as to the defendant's availability would have revealed that the defendant would be present for trial on the 18th. There is nothing in the record to support counsel's inability to be ready for trial, nor is there evidence in the record to justify

---

1. In his speech entitled "The State of the Judiciary—1970" delivered to the American Bar Association's Annual Meeting in August, 1970, Mr. Chief Justice Burger, considering the best means to give deterrent effect to the criminal law, stated:

"The most simple and most obvious remedy is to give courts the manpower and tools—including the prosecutors and defense lawyers—to try criminal cases within sixty days after indictment and then see what happens. I predict it would sharply reduce the crime rate." 56 A.B.A.J. 933 (1970).

2. The Commission's Task Force on Administration of Justice recommends, "Barring exceptional circumstances trial should follow within nine weeks of arraignment on the indictment or information. If no motions are made, this period should be substantially shortened." The President's Commission on Law Enforcement and Administration of Justice Task Force Report: The Courts (1967).

setting aside this conviction on the grounds that the defendant was prejudiced by incompetent or uncooperative counsel. The case was fairly tried and the defendant was adequately represented.

We turn to the defendant's second contention.

Kimball's November 19 arrest occurred at the Clayton House Motel in Waterloo. He was arrested by local police officers and a special F.B.I. investigator for failure to appear the previous day in Danville, Illinois, for trial on a federal charge involving the alleged theft of meat. He was taken to the county jail where his personal effects, including two sets of keys, were placed in an envelope and turned over the United States Marshal for safekeeping. A white and gold Cadillac Eldorado, bearing Nebraska plates and apparently belonging to Kimball, was parked at the motel. The F.B.I. agent immediately instituted an inquiry with his headquarters in Omaha, Nebraska, to determine the ownership of the car.

On November 21, the F.B.I. agent acquired the keys from the marshal, used one of them to start the Cadillac, and drove it to the police parking area. Not until November 22 did the F.B.I. determine that the defendant was not the owner of the car.

At trial, the government, over the defendant's objection, introduced testimony that the key found in the defendant's possession fit the Cadillac. The defendant contended at trial, and contends here, that the keys were obtained in an illegal search and that evidence linking them to the Cadillac should have been suppressed. He relies primarily on Brett v. United States, 412 F.2d 401 (5th Cir. 1969). We agree that this case gives support to the defendant's contentions, but we do not find it necessary to determine whether we will follow *Brett* since we deem any error in admitting this evidence so unimportant and insignificant as to be harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

The evidence produced to support the defendant's conviction was overwhelming. The defendant gave the license plate number, the state of the plates' issuance, and the make of the stolen car on the motel registration card, which was produced at trial. The registration card showed him as registered in room number 139. Both the desk clerk and the arresting officer identified Kimball at trial as the occupant of room 139. The stolen Cadillac was found parked outside room 139, where it had remained stationary for almost two days after Kimball's arrest. The registration clerk testified that Kimball was the only person involved in the rental of room 139.

In the light of these facts, we find that the evidence linking the keys in Kimball's possession with the stolen car was merely cumulative and was harmless beyond a reasonable doubt. Chapman v. California, *supra.*

Kimball's own testimony added weight to the state's case. He admitted that he took the Cadillac from a parking ramp in Lincoln, Nebraska, and drove it to Waterloo, Iowa, to Des Moines, Iowa, and back to Waterloo, without the knowledge or consent of the owner.

Kimball's defense was that he intended only to borrow the car and to return it before the owner came to get it out of storage.

The law in this Circuit is that § 2312 is violated by "something less than permanency and something less than a deprival of the totality of ownership." United States v. Bruton, 414 F.2d 905 (8th Cir. 1969); Stewart v. United States, 395 F.2d 484 (8th Cir. 1968); Schwab v. United States, 327 F.2d 11 (8th Cir. 1964). The defendant's own admissions at trial established a violation of the statute.

The judgment of the District Court is affirmed.