UNITED STATES of America,

v.

Leroy HENRY, Brian Young, Mark Esposito, Jeffrey Salgado, Shefton Hunter, Irwin Raymond Simmons, Chanel Harper, Herman Young Brown, Devin Paront, Frazer Daniel Lennard, Philip Franchina, and Robert Inglesias, Defendants.

No. S 93 Cr. 690 (AGS).

United States District Court,
S.D. New York.

Aug. 26, 1994.

Tom Clark, Asst. U.S. Atty., S.D.N.Y., U.S. Dept. of Justice, New York City, for U.S.

Maurice H. Sercarz, New York City, for defendant Devon Paront.

Labe M. Richman, New York City, for defendant Mark Esposito.

Dana L. Hanna, Brooklyn, NY, for defendant Shefton Hunter.

Robert J. Anello, Morvillo, Abramowitz, Grand, Iason & Silberberg, P.C., New York City, for defendant Chanel Harper.

Robert Gottlieb, Commack, NY, for defendant Leroy Henry.

Kenneth A. Paul, New York City, for defendant Brian Young.

## OPINION AND ORDER

SCHWARTZ, District Judge:

### BACKGROUND

The indictment before the Court, S 93 Cr. 690, charges twelve defendants under 28 U.S.C. § 371 with conspiracy to commit offenses including mail fraud in violation of 18 U.S.C. §§ 1341 & 2, and interstate transportation of stolen motor vehicles in violation of 18 U.S.C. §§ 2312 & 2. Indictment at ¶ 1. More precisely, the Government alleges that the named defendants unlawfully: 1) arranged leases of automobiles for persons with inadequate credit histories by creating leasing contracts that contained false and fraudulent information; 2) arranged financed contracts of sale of automobiles by submitting false and fraudulent information to the lienholders; 3) concealed the fact that the purchasing and leasing contracts contained false and fraudulent information; 4) caused certain mail matter to be delivered in order to obtain money and property by means of false and fraudulent pretenses; and 5) knowingly transported stolen motor vehicles in interstate commerce. Indictment ¶¶ 4–8, 9, 10, 11, 12, 13, 14 and 16.

Defendants Leroy Henry, Chanel Harper, Mark Esposito, Shefton Hunter, and Devon Paront have submitted various discovery and non-discovery motions to the Court. We divide defendants' motions by defendant and topic, and address each request below.

### DISCUSSION

#### Defendant Henry's Pre-trial Motions

Henry has requested this Court to order the following relief: 1) disclosure of the Grand Jury minutes; 2) suppression of evidence, or, alternatively, a suppression hearing concerning evidence seized from defendant's place of employment, World Class Leasing, Inc. ("WCL"); 3) disclosure by the Government of all co-conspirator and co-defendant statements; 4) a pre-trial hearing to determine the admissibility of co-conspirator statements; and 5) the right to join in all motions made on behalf of the co-defendants. For the reasons set forth below, we deny Henry's motions in their entirety with the exception that he is permitted to join in the motions of his co-defendants.

#### 1. Disclosure of Grand Jury Minutes

 Henry requests, pursuant to Fed. R.Crim.P. 6(e)(3)(C)(ii),[1] that the Court direct the government to furnish his counsel with a transcript of the Grand Jury proceedings. The secrecy of the Grand Jury proceeding, however, is central to our criminal justice system. *See, e.g., United States v. Procter & Gamble,* 356 U.S. 677, 682, 78 S.Ct. 983, 986, 2 L.Ed.2d 1077 (1958) ("The grand jury as a public institution serving the community might suffer if those testifying today knew that the secrecy of their testimony serving the community might suffer if those testifying today knew that the secrecy of their testimony would be lifted tomorrow"). As a result, a party seeking disclosure of Grand Jury minutes in this Circuit confronts a stringent standard, namely, he must "show a particularized need that outweighs the government's strong interest in secrecy." *United States v. Moten,* 582 F.2d 654, 662 (2d Cir.1978) ("[a] review of grand jury minutes is rarely permitted without specific factual allegations of governmental misconduct").

Defendant Henry has not made this showing. He alleges conclusively that: (1) the Indictment might be based on insufficient evidence, specifically, founded excessively upon unreliable hearsay; and (2) the prosecutor might not have advised the Grand Jury that the testimony it heard was in fact hearsay evidence. As a threshold matter, we note that in light of the Supreme Court's recent decision in *United States v. Williams,*

---

1. This provision permits disclosure of the Grand Jury minutes under the following circumstances: when permitted by a court at the request of the defendant, upon showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury.

— U.S. ——, 112 S.Ct. 1735, 118 L.Ed.2d 352 (1992), serious questions exist as to whether this Court even possesses the supervisory power to dismiss an indictment on the grounds advanced by Henry even were we to assume them to be true. In *Williams,* the Supreme Court restricted our use of supervisory powers to enforcement of standards of prosecutorial conduct explicitly drafted and approved by Congress, and admonished against efforts by trial courts to use these powers as a means of prescribing such standards, *id.,* —— U.S. at ——–——, 112 S.Ct. at 1741–42; therefore, doubt surrounds Henry's capacity to base a motion to dismiss the indictment on the grounds upon which he justifies disclosure of the Grand Jury minutes. In this Circuit, moreover, it is well-established not only that "an indictment if valid on its face, may not be challenged on the ground that it is based on inadequate evidence,." *United States v. Casamento,* 887 F.2d at 1182 but also that a defendant's mere speculation as to what occurred in front of the Grand Jury does not warrant inspection of the minutes by defense counsel. *See United States v. Wilson,* 565 F.Supp. 1416, 1436 (S.D.N.Y.1983); *United States v. Abrams,* 539 F.Supp. 378, 389 (S.D.N.Y.1982) (defendant must base showing on more than "pure speculation"); *United States v. McGrath,* 459 F.Supp. 1271, 1273 (S.D.N.Y. 1978) (defendant's showing must include "more than unsubstantiated, speculative assertions of improprieties in the proceedings"); 8 J. Moore, *Moore's Federal Practice, Rules of Criminal Procedure,* ¶ 6.05[3], at 6–141–42 (February 1992) (general allegations that the transcripts might provide evidence).

Finally, the Court has reviewed the Grand Jury minutes *in camera,* and finds no evidence to support Henry's request. In our view, the evidence presented at the proceedings was not unreliable, and the prosecutor provided a clear explanation to the jurors regarding the presentation of hearsay evidence and the Grand Jury's right to request firsthand testimony. Accordingly, for all of the foregoing reasons, we deny Henry's mo-

tion for disclosure of the Grand Jury minutes.[2]

## 2. Request for a suppression of evidence or alternatively a suppression hearing:

Henry also seeks suppression of the evidence seized from the WCL office pursuant to a search warrant. Henry poses two alternative reasons for suppressing the evidence, namely: 1) the search warrant was invalid because the affidavit supporting the warrant failed to provide sufficient probable cause; and 2) the search warrant was invalid because it was vague and overbroad.

### A. Probable Cause

In this Circuit, it is well established that a search warrant is properly supported by probable cause when the "totality-of-the-circumstances" indicate a probability that: 1) criminal activity exists; and 2) evidence of such activity will be found at the location to be searched. *see Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d. 527 (1983); *U.S. v. Rowell,* 903 F.2d 899, 903 (2d Cir. 1990); *U.S. v. Millan–Colon,* 836 F.Supp. 1007, 1017 (S.D.N.Y.1993). This is a "flexible and common-sense standard," *Texas v. Brown,* 460 U.S. 730, 742, 103 S.Ct. 1535, 1543, 75 L.Ed.2d 502 (1983), which the Court must apply in a practical light. *See Gates,* 462 U.S. at 241, 103 S.Ct. at 2333.

In our view, the affidavit supporting the search warrant satisfies the foregoing "totality of the circumstances" test, establishing a strong probability that criminal activity existed and that evidence of that activity was located at the WCL office. This affidavit, consisting of the testimony of Special Agent Kevin J. White of the Federal Bureau of Investigation, drew from information that he had received from Irwin Raymond Simmons, cooperating witnesses and victims. Affidavit of Special Agent Kevin J. White ¶ 2. These sources confirmed that: 1) Simmons was involved in a scheme whereby he would create false documents, sometimes through the use of credit information of unsuspecting individuals, in order to obtain cars for persons with

---

**2.** For the reasons set forth above, the Court also denies the motions of defendants Harper and

Esposito seeking similar relief.

bad or no credit; and 2) Simmons would send, via facsimile, fraudulent documents related to this scheme to the WCL office. *Id,* ¶¶ 2–4, 5. This information provides ample probable cause to support a search of WCL.

■ We note, moreover, that in reviewing determinations of probable cause, this Court owes substantial deference to the Magistrate Judge's finding. *U.S. v. Feliz–Cordero,* 859 F.2d 250, 252 (2d Cir.1988); *see also Rowell,* 903 F.2d at 902 ("On appellate review, a determination of probable cause deserves 'great deference' and will be upheld so long as there was a 'substantial basis for … conclud[ing] that a search warrant would uncover evidence of wrongdoing.'") (citations omitted); *United States v. Travisano,* 724 F.2d 341, 345 (2d Cir.1983) (a magistrate's finding of probable cause represents a substantial factor supporting the validity of any warrant, and resolves the truly close cases in favor of upholding the warrant). Such deference is particularly justified here, where the Magistrate Judge not only reviewed the Government's evidence, but required the Government to specify additional sources of its information. *See* Gov't Mem. at 15 (indicating that the Magistrate Judge directed the Government to identify, in a handwritten addendum, additional sources of the information contained in the affidavit in support of the search warrant).

In light of the foregoing, we decline to set aside the search warrant for the WCL office on the ground of insufficient probable cause.

### B. *Breadth of the Warrant*

■ Henry also argues that the search warrant was overly broad, and consequently should be declared invalid. The Fourth Amendment commands that "no warrants shall issue [unless] particularly describing the place to be searched and the persons or things to be seized." U.S. Const.Amend. IV. These requirements are satisfied "where the description of materials to be seized enables the searcher to reasonably ascertain and identify the things authorized to be seized." *United States v. Millan–Colon,* 836 F.Supp. 1007, 1018 (S.D.N.Y.1993); *see United States v. George,* 975 F.2d 72, 74 (2d Cir.1992). The Second Circuit has also, noted, however, "Courts tend to tolerate a greater degree of

ambiguity where law enforcement agents have done the best that could reasonably be expected under the circumstances, have acquired all the descriptive facts which a reasonable investigation could be expected to cover, and have insured that all those facts were included in the warrant." *United States v. Young,* 745 F.2d 733, 759 (2d Cir. 1984), *cert denied* 470 U.S. 1084, 105 S.Ct. 1842, 85 L.Ed.2d 142 (1985); *see United States v. Buck,* 813 F.2d 588, 590 (2d Cir. 1987).

In the case at bar, Special Agent White's affidavit concededly provided the Magistrate Judge with a lengthy list of items to be searched at WCL's office. As noted *supra* at 1194, however, at the time of the Government's application for the warrant, the investigating agent, White, had been informed that fraudulent documents were being faxed to WCL's office, but had not been given specific information as to where the documents were located within that office. Under these circumstances, where more specificity regarding items to be searched was not possible, it was reasonable for the Magistrate Judge to approve the instant warrant, which mirrored the supporting affidavit's list of items to be searched. *See Andresen v. Maryland,* 427 U.S. 463, 479, 96 S.Ct. 2737, 2748, 49 L.Ed.2d 627 (1976) (upholding a warrant including an "exhaustive list of particularly described documents," and allowing a search for "other fruits, instrumentalities and evidence of crime at this [time] unknown."); *United States v. Riley,* 906 F.2d 841, 845 (2d Cir.1990) ("[A] warrant [permitting] officers to examine many papers … to determine if they are within the described category … recognizes the reality that few people keep documents of their criminal transactions in a folder marked 'drug records.'"). It is also critical for our overbreadth analysis that the warrant specified the crimes that were being investigated, namely, mail fraud and interstate transportation of stolen vehicles. *See United States v. George,* 975 F.2d at 75 (noting that the Second Circuit has generally "upheld warrants authorizing the seizure of 'evidence,' 'instrumentalities,' or generic classes of items where a more precise description was not

possible in the circumstances [and] the warrant identified a specific illegal activity to which the items are related."). These factors persuade us that the search warrant for WCL was not overly broad.

■ Accordingly, we deny Henry's request to suppress evidence seized from WCL pursuant to the search warrant.[3] Nor, clearly, do we find it necessary to hold an evidentiary hearing on this matter.

### 3. Requests for Pre–Trial Discovery

#### A. *Disclosure under Bruton v. United States*

■ Henry requests that the Court order the government to disclose any statements of non-testifying co-defendants which it intends to introduce at trial so that any *Bruton* [*Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) ] issues may be resolved in advance of trial. It is premature for this Court to address potential *Bruton* issues where no trial date has been set and the Court has no information as to whether any of Henry's co-defendants will decide to plead guilty. We therefore deny Henry's motion without prejudice to renew.

#### B. *Disclosure under Brady v. Maryland*

■ Henry moves for disclosure of materials required under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and its progeny. The Government acknowledges its obligations under *Brady,* and represents to the Court that any such material which comes into the Government's possession will be disclosed promptly. Gov't Memo. at 24. The Court will hold the Government to this representation. In order to ensure that defendants receive sufficient time to

prepare their defense and to avoid unnecessary delays at trial, the Court orders the Government to furnish defendants with all *Brady* materials no later than forty eight hours prior to the testimony of a witness to whom those materials relate.

### 4. Request for Pre-trial Adjudication of the Admissibility of Co–Conspirator Statements

■ Henry requests a hearing, prior to trial, on the admissibility of any co-conspirator statements. Such a hearing, termed a *"James"* hearing, *see United States v. James,* 576 F.2d 1121 (5th Cir.1978), *cert. denied,* 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1978) "is neither required nor generally convened in this Circuit." *United States v. Giovanelli,* 747 F.Supp. 875, 878–79 (S.D.N.Y.1989) (quotations and citations omitted); *see also United States v. Castellano,* 610 F.Supp. 1359, 1427 (S.D.N.Y.1985) ("[t]he Second Circuit has consistently held that declarations that are otherwise hearsay may nevertheless be provisionally admitted pursuant to Rule 801(d)(2)(E) 'subject to connection' "); *United States v. Matos–Peralta,* 691 F.Supp. 780, 788 (S.D.N.Y.1988) (same); *United States v. Persico,* 621 F.Supp. 842, 867 (S.D.N.Y.1985) (same), *aff'd.,* 774 F.2d 30 (2d Cir.1985), *cert. denied sub nom., Russo v. United States,* 486 U.S. 1022, 108 S.Ct. 1995, 100 L.Ed.2d 227 (1988). The Court denies Henry's motion, but will of course rule at the close of the Government's case on the issue of whether the Government has proven the existence of a conspiracy, that both the declarant and the defendant against whom the statements are offered were members of the conspiracy, and that the statements were made within the scope of and in furtherance of the conspiracy. *See United States v.*

---

**3.** We observe that, even were the search warrant invalid, there is no evidence in the record that it was not objectively reasonable for the officers to rely on the warrant in executing the search. Consequently, we would be compelled to uphold the search under the "good faith rule" articulated in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). *Leon* creates a presumption that an officer relying on a warrant acts in good faith. *See Leon,* 468 U.S. at 922, 104 S.Ct. at 3420. Here, even if we assumed *arguendo* the validity of defendant Henry's arguments with respect to probable cause or

overbreadth, he has clearly failed to identify a circumstance in which the good faith rule would not apply, that is:

(1) where the issuing magistrate has been knowingly misled; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and (4) where the warrant is so facially deficient that reliance upon it is unreasonable.

*Leon,* 468 U.S. at 923, 104 S.Ct. at 3420.

*Giovanelli, supra,* 747 F.Supp. at 879 (such a determination at trial is known as a *Geaney* ruling and "is the norm in this Circuit") (citations omitted).

### 5. Request to Join in Motions of Other Defendant

The Court grants the motions of Henry and other defendants to join in the motions of co-defendants to the extent that those motions inure to their benefit.

### Defendant Harper's Motion for a Bill of Particulars

■ Defendant Chanel Harper requests a bills of particulars. The Court finds that materials other than a bill of particulars, including pre-trial discovery materials and the indictment itself sufficiently inform the defendant of the charges against her. Accordingly, the motion is denied.

■ The intended scope of a bill of particulars is to minimize surprise to the defendant, to allow the defendant to obtain those facts needed to prepare fully a defense, and to permit the defendant successfully to plead double jeopardy if prosecuted later for the same crime. This instrument should not function to disclose evidence, witnesses, and legal theories to be offered by the Government at trial or as a general investigative tool for the defense. *Wong Tai v. United States,* 273 U.S. 77, 47 S.Ct. 300, 71 L.Ed. 545 (1927); *United States v. Salazar,* 485 F.2d 1272, 1278 (2d Cir.1973), *cert. denied,* 415 U.S. 985, 94 S.Ct. 1579, 39 L.Ed.2d 882 (1974); *United States v. Torres,* 901 F.2d 205, 234 (2d Cir.1990); *United States v. Gottlieb,* 493 F.2d 987, 994 (2d Cir.1974); *United States v. Gotti,* 784 F.Supp. 1017, 1018 (E.D.N.Y.1992); *United States v. Mannino,* 480 F.Supp. 1182, 1185 (S.D.N.Y.1979); *United States v. Leonelli,* 428 F.Supp. 880, 882 (S.D.N.Y.1977). Nor, given that a bill of particulars confines the Government's proof to particulars furnished, should a motion for a bill of particulars be granted where the consequence would be to restrict unduly the Government's ability to present its case, *United States v. Massino,* 605 F.Supp. 1565 (S.D.N.Y.1985), *rev'd on other grounds,* 784 F.2d 153 (2d Cir.1986) or permit the defendant to tailor her testimony to explain away

the Government's case. *United States v. Cimino,* 31 F.R.D. 277, 279 (S.D.N.Y.1962), *aff'd,* 321 F.2d 509 (2d Cir.1963), *cert. denied,* 375 U.S. 974, 84 S.Ct. 491, 11 L.Ed.2d 418 (1964). It is simply insufficient that the requested information would be *useful* to the defendant rather than *necessary* to her defense; if the defendant has been given adequate notice of the charges against her and can prepare fully for trial with reasonably diligent efforts, the Government cannot be required to disclose additional details about its case. *United States v. Payden,* 613 F.Supp. 800, 817 (S.D.N.Y.), *aff'd,* 768 F.2d 487 (2d Cir.1985); *United States v. Greater Syracuse Bd. of Realtors, Inc.,* 438 F.Supp. 376, 379 (N.D.N.Y.1977).

■ As a threshold matter, defendant has made several requests which fall clearly outside the ambit of a bill of particulars. First, defendant demands that the government specify all acts in which she is alleged to have participated. Such requests are impermissible attempts to force the Government to "particularize all of its evidence," *United States v. Cephas,* 937 F.2d 816, 823 (2d Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 884, 116 L.Ed.2d 788 (1992), and to compel the Government "through a bill of particulars to disclose the manner in which it will prove the charges or preview its evidence or legal theory." *United States v. Facciolo,* 753 F.Supp. 449, 451 (S.D.N.Y. 1990), *aff'd,* 968 F.2d 242 (2d Cir.1992); *see also, U.S. v. Jimenez,* 824 F.Supp. 351 (S.D.N.Y.1993). As is detailed *infra* at 1198, moreover, the Government *has* specified certain acts in which Harper is alleged to have participated.

■ Second, defendant requests particulars regarding her involvement with the conspiracy. Such requests are routinely denied in the Second Circuit, *See, e.g., United States v. Matos–Peralta,* 691 F.Supp. 780, 791 (S.D.N.Y.1988); *United States v. Politi,* 334 F.Supp. 1318 (S.D.N.Y.1971), *aff'd,* 516 F.2d 897 (2d Cir.), *cert. denied,* 423 U.S. 801, 96 S.Ct. 8, 46 L.Ed.2d 244 (1975) particularly where defendants demand to know the "whens", "wheres" and "with whoms" of acts and participation in the charged conspiracy.

**1198**

United States v. Lavin, 504 F.Supp. 1356, 1362 (N.D.Ill.1981); United States v. Agnello, 367 F.Supp. 444, 450–51 (E.D.N.Y.1973); United States v. Iannelli, 53 F.R.D. 482, 483 (S.D.N.Y.1971); United States v. Jimenez, supra, 824 F.Supp. 351, 363.

 In determining whether to grant a motion requesting a bill of particulars, the Court must ascertain whether the information sought has been provided elsewhere, such as through pre-trial discovery, voluntary disclosure by the government, or the indictment itself. United States v. Feola, 651 F.Supp. 1068, 1133 (S.D.N.Y.1987), aff'd, 875 F.2d 857 (2d Cir.1989), cert. denied sub. nom, Marin v. U.S., 493 U.S. 834, 110 S.Ct. 110, 107 L.Ed.2d 72 (1989); United States v. Payden, supra, 613 F.Supp. at 816, citing 1 C.Wright, Federal Practice and Procedure (Criminal) 2d § 129 (1982). A bill of particulars is appropriate where, for example, the indictment is too general to inform defendants of the nature of the charge. See, e.g., United States v. Feola, supra, 651 F.Supp. at 1132; United States v. Leonelli, 428 F.Supp. 880 (S.D.N.Y.1977) This circumstance does not obtain in the instant case. The Indictment before the Court, 93 Cr. 690, alleges a conspiracy to violate Sections 1341 and 2312 of Title 18, United States Code, through the operation of a fraudulent automobile leasing ring. Furthermore, although federal law does not require an indictment to charge, or the Government to prove, a single overt act in furtherance of such a conspiracy, United States v. Knuckles, 581 F.2d 305, 311 (2d Cir.), cert. denied, 439 U.S. 986, 99 S.Ct. 581, 58 L.Ed.2d 659 (1978); United States v. Bermudez, 526 F.2d 89, 94 (2d Cir.1975), cert. denied., 425 U.S. 970, 96 S.Ct. 2166, 48 L.Ed.2d 793 (1976); United States v. Feola, supra, 651 F.Supp. at 1133; United v. Jimenez, 824 F.Supp. 351 (S.D.N.Y.1993) the Indictment alleges twenty one overt acts undertaken in furtherance of the conspiracy, Indictment S 93 Cr. 690 ¶ 9, including an act undertaken by Harper herself. Id. at ¶ 9(m) (alleging that "In or about October, 1992, CHANEL HARPER, the defendant, signed the name of another individual to documents related to the leasing of automobiles"). Moreover, pre-trial discovery materials that the Court has examined, and that the Defen-

dant in any exercise of reasonable diligence should also have examined, notify Ms. Harper of many of the particulars she requests regarding the overt act alleged in ¶ 9(m) of the Indictment. See, e.g., Criminal Complaint 93–1017 at 4–5 (confidential informant indicates that Raymond Simmons twice sent Ms. Harper to Ramsey Auto to sign for the delivery of cars in the name of Kimberly Barth); Statement of Chanel Harper to Bergen County Prosecutor's Office, October 23, 1992 at 2–17 (detailing Ms. Harper's attempted signature for delivery of an auto in the name of Kimberly Barth on October 22, 1992 and on one prior occasion); Statement of Devon Peront to Bergen County's Prosecutor's Office, October 26, 1992, at 3–5, 17–23 (describing Ms. Harper's allegedly fraudulent impersonation of Kimberly Barth at Stateline Toyota on October 22, 1992). In sum, the Indictment and the pretrial discovery materials combine to provide defendant " 'with information about the details of the charge against [her],' " and avoids " 'prejudicial surprise at trial.' " United States v. Torres, supra, 901 F.2d at 234 (quotations omitted); therefore, defendant Harper's motion for a bill of particulars is denied.

## Severance Motions

### 1. Esposito

██ Defendant Esposito moves for an order pursuant to Fed.R.Crim.P. 14 severing his trial from that of defendant Simmons. His grounds for severance include the fear of prejudicial spillover, deriving from: (1) the fact that defendant Simmons is charged with frauds which involved "the actual stealing of cars with no intention to pay for them or to insure them," while Esposito, Leroy Henry, and others "only leased cars in their names and subleased them to others, making payments for the cars and for insurance, and fully intending to continue same." Affidavit of Labe M. Richman, Esq. ("Richman Aff.") ¶ 5; and (2) the disparity of evidence against him relative to Simmons. Defendant Esposito postulates that a jury will be unable to segregate the evidence applicable to each defendant and follow the Court's in limine instructions as they apply to each defendant.

These contentions are meritless, and the Court therefore denies defendant's motion for severance.

A motion to sever is "committed to the sound discretion of the trial court". *United States v. Scarpa*, 913 F.2d 993, 1014 (2d Cir.1990); *United States v. Torres, supra*, 901 F.2d at 230; *United States v. Casamento*, 887 F.2d 1141, 1149 (2d Cir.1989), *cert denied*, 493 U.S. 1081, 110 S.Ct. 1138, 107 L.Ed.2d 1043 (1990). In exercising this discretion, the Court must pay heed to the powerful institutional interests in judicial economy favoring joint rather than separate trials. The Supreme Court articulated these concerns in *Richardson v. Marsh*, 481 U.S. 200, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987):

> "It would impair both the efficiency and the fairness of the criminal justice system to require ... that prosecutors bring separate proceedings, presenting the same evidence again and again, requiring victims and witnesses to repeat the inconvenience (and sometimes trauma) of testifying, and randomly favoring the last tried defendants who have the advantage of knowing the prosecution's case beforehand. Joint trials generally serve the interests of justice by avoiding inconsistent verdicts and enabling more accurate assessment of relative culpability—advantages which sometimes operate to the defendant's benefit. Even apart from these tactical considerations, joint trials generally serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts."

*Id.*, at 210, 107 S.Ct. at 1708–09.

Consideration for the burdens upon the criminal justice system imposed by separate trials has given rise to a strong presumption in favor joint trials and led courts to erect high barriers to defendants who move for severance. Where "defendants ... are jointly indicted [they] should be jointly tried." *United States v. Ventura*, 724 F.2d 305, 312 (2d Cir.1983); *see also, United States v. Lyles*, 593 F.2d 182, 191 (2d Cir.), *cert. de-*

*nied*, 440 U.S. 972, 99 S.Ct. 1537, 59 L.Ed.2d 789 (1979) (presumption in favor of joint trials "conserves judicial resources, alleviates the burden on citizens serving as jurors, and avoids the necessity of having witnesses reiterate testimony in a series of trials") (quoting *United States v. Borelli*, 435 F.2d 500, 502–03 (2d Cir.), *cert. denied*, 401 U.S. 946, 91 S.Ct. 963, 28 L.Ed.2d 229 (1971)).

■ As a consequence of this presumption in favor of joint trials, defendants who seek separate trials must bear the " 'extremely difficult burden' " (*United States v. Casamento, supra*, 887 F.2d at 1149 (quoting *United States v. Carpentier*, 689 F.2d 21, 27 (2nd Cir.1982) *cert. denied*, 459 U.S. 1108, 103 S.Ct. 735, 74 L.Ed.2d 957 (1983))) of demonstrating that they would be so prejudiced by joinder that a constitutionally fair trial would prove unattainable. *See, United States v. Torres, supra*, 901 F.2d at 230. Such prejudice is not established merely by a showing that defendants will suffer some prejudice or may have a better chance for acquittal at separate trials. *Id.; see also United States v. Scarpa*, 913 F.2d at 1015; *U.S. v. Jimenez, supra*, 824 F.Supp. at 367. Rather, defendants must show that they will suffer prejudice so substantial that a "miscarriage of justice" will occur. *United States v. Friedman*, 854 F.2d 535, 563 (2d Cir.1988), *cert. denied*, 490 U.S. 1004, 109 S.Ct. 1637, 104 L.Ed.2d 153 (1989); *United States v. DeVillio*, 983 F.2d 1185, 1192 (2d Cir.1993); *United States v. Lasanta*, 978 F.2d 1300, 1306 (2d Cir.1992).

Defendant Esposito has not made a sufficient showing of prejudice.[4] As a general matter, the Second Circuit has explicitly stated that "disparity in the quantity of evidence and of proof of culpability are inevitable in any multi-defendant trial, and by themselves do not warrant a severance." *United States v. Cardascia*, 951 F.2d 474, 482 (2d Cir.1991); *United v. Panza*, 750 F.2d 1141, 1149 (2d Cir.1984); *United States v. Carson*, 702 F.2d

---

4. The Court observes at the outset that defendant is not entitled to the special considerations regarding severance set forth in *United States v. Casamento, supra*, 887 F.2d 1141 (2d Cir.1989), *cert. denied*, 493 U.S. 1081, 110 S.Ct. 1138, 107 L.Ed.2d 1043 (1990). In that case, the Second Circuit held that where a proposed trial is expected to last more than four months *and* is to involve more than ten defendants, the district court should carefully consider the advisability of proceeding by way of a single trial. The *Casamento* parameters are not exceeded in this case.

351, 366–67 (2d Cir.), *cert. denied,* 462 U.S. 1108, 103 S.Ct. 2456, 77 L.Ed.2d 1335 (1983). While there may exist "differences in degree of guilt and possibly notoriety" of the defendants, such a circumstance is not a sufficient ground for separate trials. *United States v. Aloi,* 511 F.2d 585, 598 (2d Cir.), *cert. denied,* 423 U.S. 1015, 96 S.Ct. 447, 46 L.Ed.2d 386 (1975); *see also United States v. Torres, supra,* 901 F.2d at 230.

More specifically, in forwarding his prejudicial "spillover" argument for a separate trial, defendant ignores the fact that where, as here, each defendant is alleged to be a member of a conspiracy, virtually all of the evidence admitted in a joint trial would be properly admissible against each separate defendant in a separate trial as acts of co-conspirators in furtherance of the charged conspiracy. *See United States v. Nersesian,* 824 F.2d 1294, 1304 (2d Cir.), *cert. denied,* 484 U.S. 958, 108 S.Ct. 357, 98 L.Ed.2d 382 (1987); *United States v. Torres,* 901 F.2d at 230; *see also United States v. DiNome,* 954 F.2d 839, 843 (2d Cir.) (typical "spillover" prejudice basis for severance is where "evidence admissible against only one defendant is prejudicial to all defendants"), *cert. denied,* —— U.S. ——, 113 S.Ct. 94, 121 L.Ed.2d 56 (1992); *United States v. Casamento, supra,* 887 F.2d at 1153; *United States v. Angelilli,* 660 F.2d 23, 37–38 (2d Cir.1981), *cert. denied,* 455 U.S. 910, 102 S.Ct. 1258, 71 L.Ed.2d 449 (1982); *see also* Fed.R.Evid. 801(d)(2)(E). A properly joined defendant is not entitled to a separate trial merely because there will be testimony relating to other criminal activities of codefendants. *E.g., United States v. Weisman,* 624 F.2d 1118, 1129 (2d Cir.), *cert. denied,* 449 U.S. 871, 101 S.Ct. 209, 66 L.Ed.2d 91 (1980).[5] That some evidence introduced at trial can be considered only as against one defendant or another does not establish substantial prejudice justifying severance, because the Court will reduce any resultant prejudice by instructing the jury to consider the guilt of each defendant individually. *See, e.g., United States v. Lasanta,* 978 F.2d 1300, 1307 (2d Cir.1992) ("[t]he district court countered any possible spillover with specific instructions to the jury ... that the jury should consider the evidence separately against each defendant"); *see also United States v. Cardascia, supra,* 951 F.2d at 483–84; *United States v. Torres, supra,* 901 F.2d at 230. The jurors, moreover, are presumed to be able to follow such instructions. *United States v. Potamitis,* 739 F.2d 784, 790 (2d Cir.), *cert. denied,* 469 U.S. 918, 105 S.Ct. 297, 83 L.Ed.2d 232 (1984).

In addition, the Government contends that the dichotomy that Esposito creates between the actions of Simmons and his own actions is a false one. More precisely, the Indictment connects Esposito to Simmons, Indictment ¶ 9(h) ("In or about August 1992, MARK ESPOSITO, a/k/a "Marc Esposito," the defendant, instructed Box Leasing Corporation to change ESPOSITO's address to "Family Travel," care of IRWIN RAYMOND SIMMONS, a/k/a "Ray Simmons," the defendant, 1967 Turnball [sic] Avenue, Bronx, New York.") and the Government represents that it will introduce at trial further evidence linking Esposito to Simmons, Clark ¶ 4, Gov't Mem. at 12.

Furthermore, the Government contends that it will demonstrate at trial that, despite Esposito's protest to the contrary, the cars obtained and subleased by World Class Leasing were stolen regardless of whether Esposito and others intended to honor the payment terms of the leases, because the lenders were induced to enter the leases by the defendants' false and fraudulent representations, including that they would not sublet the cars. *See* Clark Aff. Exh. 3 (agreement in the name of Marc Esposito, a standard closed-end vehicle lease agreement, prohibits subleasing); *United States v. Turley,* 352 U.S. 407, 417, 77 S.Ct. 397, 402, 1 L.Ed.2d 430 (1957) (" 'Stolen' as used in 18 U.S.C. § 2312 includes all felonious takings of motor vehicles with intent to deprive the owner of

---

**5.** All defendants in this case are properly joined because they are alleged to have participated in the underlying conspiracy. *See* Fed.Crim.P. Rule 8(b) (permits defendants to be joined "if they are alleged to have participated in the same act or transaction or the same series of acts or transactions constituting an offense"); *United States v. Bernstein,* 533 F.2d 775, 789 (2d Cir.) (a conspiracy charge "provides a common link and demonstrates the existence of a common plan" for purposes of Rule 8(b)), *cert. denied,* 429 U.S. 998, 97 S.Ct. 523, 50 L.Ed.2d 608 (1976).

the rights and benefits of ownership, regardless of whether or not the theft constitutes common-law larceny").

Accordingly, for the foregoing reasons, the severance motion of defendant Esposito is denied.

### 2. Harper

■ Defendant Harper requests a severance based on prejudicial spillover and on the ground that she has a defense that is antagonistic to the defense of certain co-conspirators. Harper Mem. at 29–30. With respect to prejudicial spillover, under the legal standards discussed *supra* at 1198–1200, Harper has failed to identify any specific prejudice that would render a joint trial so prejudicial as to cause "a miscarriage of justice." *United States v. Bari*, 750 F.2d 1169, 1177 (2d Cir.1984).

With respect to Harper's claim of an antagonistic defense, namely that she did not know her conduct was illegal, we find it premature to decide the motion because it is not presently clear how many defendants intend to proceed to trial. Accordingly, we deny Harper's motion for severance without prejudice to renew.

### 3. Hunter

Defendant Hunter requests that the Court sever his trial from that of all of his co-defendants on the grounds of: (1) prejudicial spillover; (2) antagonism of defenses; and (3) potential *Bruton* problems. We have already addressed the issues of prejudicial spillover and antagonistic defenses at length, and find that under the relevant legal standards, Hunter has not justified severance on the basis of prejudicial spillover nor demonstrated that his claim of an antagonistic defense can be evaluated at this time. Accord-

ingly, Hunter's motion for severance is denied without prejudice to renew at the time that the issue of antagonistic defenses becomes ripe for decision.[6]

## Harper's Motion to Dismiss Portions of the Indictment

### 1. Count One

■ Harper moves under Rules 8(b) and 12(b)(2) of the Federal Rules of Criminal Procedure, to dismiss Count One of the superseding indictment[7] on the ground that it charges multiple conspiracies. We find this argument unpersuasive.

A common-sense reading of Count One compels the conclusion that Count 1 charges a single conspiracy, involving all of the named defendants, that had multiple objectives. *See United States v. Giese*, 597 F.2d 1170, 1178 (9th Cir.), *cert. denied*, 444 U.S. 979, 100 S.Ct. 480, 62 L.Ed.2d 405 (1979) (courts must construe indictments "according to common sense"). It is beyond dispute that a conspiracy count is not duplicitous where it alleges that the conspirators' agreement involved more than one object. *See e.g., Braverman v. United States*, 317 U.S. 49, 53–54, 63 S.Ct. 99, 102, 87 L.Ed. 23 (1942) ("The allegation in a single count of a conspiracy to commit several crimes is not duplicitous."); *United States v. Aracri*, 968 F.2d 1512, 1518 (2d Cir.1992). That Harper suggests that the Government may *at trial* prove multiple conspiracies is irrelevant to resolution of this pre-trial motion attacking the sufficiency of Count One of the superseding indictment. *See Aracri*, 968 F.2d at 1519 ("Whether the government has proven a single conspiracy or has instead proved 'multiple other independent conspiracies is a question of fact for a properly instructed jury.' ") (quoting *United States v. Alessi*, 638 F.2d 466, 472 (2d Cir.1980)); *United States v.*

---

**6.** With respect to potential *Bruton* problems, which defendant Esposito also cites in moving for severance, this Court will not sever trials based on a *Bruton* issue. Rather, in accordance with Second Circuit authority, we shall redact any statement that presents a *Bruton* problem to eliminate incriminating references to co-defendants, and will permit affected defendants to request a limiting instruction to the jury. *See United States v. Romero*, 897 F.2d 47, 53 (2d Cir.), *cert. denied*, 497 U.S. 1010, 110 S.Ct. 3253,

111 L.Ed.2d 762 (1990), *and cert. denied*, 498 U.S. 1092, 111 S.Ct. 975, 112 L.Ed.2d 1060 (1991); *United States v. Leonard*, 817 F.Supp. 286, 299 (E.D.N.Y.1992).

**7.** Count One alleges that defendant Harper and her co-defendants, among others, conspired "to commit offenses against the United States, to wit, to violate Sections 1341 and 2312 of Title 18, United States Code."

*Harrelson,* 754 F.2d 1153, 1176 (5th Cir.) ("the propriety of joinder under Rule 8 is determined by the initial allegations of the indictment, which are accepted as true absent argument of prosecutorial misconduct."), *cert. denied,* 474 U.S. 908, 106 S.Ct. 277, 88 L.Ed.2d 241, *and cert. denied,* 474 U.S. 1034, 106 S.Ct. 599, 88 L.Ed.2d 578 (1985); *United States v. Jones,* 652 F.Supp. 1561, 1565 (S.D.N.Y.1986). Accordingly, Harper's motion to dismiss Count One of the superseding indictment is denied.

## 2. Objects of the Conspiracy

 Harper requests that the Court dismiss various objects of the conspiracy on the grounds that three of the stated objects of the conspiracy alleged in Count One do not allege violations of federal law and are, therefore, subject to dismissal. It is well-settled, however, that "the inclusion of a non-federal offense in a federal conspiracy indictment is permissible if the conspiracy also involves federal offenses," *Giese,* 597 F.2d at 1179; *see also Anderson v. United States,* 417 U.S. 211, 226, 94 S.Ct. 2253, 2263, 41 L.Ed.2d 20 (1974), even where the federal offense is merely a "minor" objective of the conspiracy. *See Ingram v. United States,* 360 U.S. 672, 679–680, 79 S.Ct. 1314, 1319–1320, 3 L.Ed.2d 1503 (1959). Count One of the superseding indictment alleges two federal crimes, namely, mail fraud and interstate transportation of stolen vehicles. If a jury determines that Harper agreed to commit either of these federal crimes, she may be convicted on Count One. *See United States v. Sharpsteen,* 913 F.2d 59 (2d Cir.1990) ("the law is clear that a guilty verdict may be returned on a conspiracy count setting forth more than one object as long as the jury unanimously agrees that the defendant conspired to commit at least one object of the conspiracy."); *Giese,* 597 F.2d at 1179; *United States v. Gallishaw,* 428 F.2d 760, 763 (2d Cir.1970). Accordingly, we deny Harper's motion to dismiss those objects of the conspiracy that Harper regards as "non-federal."

 Harper also seeks dismissal of the object of the conspiracy alleged in ¶ 8 of the superseding indictment, namely, violation of Title 18, United States Code, § 2312. Essentially, Harper argues that the Indictment is insufficient in failing to allege that the conspirators intended to effect on the owners of the cars permanent deprivation of the vehicle, and failing to allege facts sufficient to satisfy the definition of "stolen" under § 2312. These contentions are meritless.

First, both case law and the leading treatises on federal jury instructions, support the position that a temporary taking violates the statute. *See Kimball v. United States,* 437 F.2d 921, 923 (8th Cir.), *cert. denied,* 402 U.S. 996, 91 S.Ct. 2181, 29 L.Ed.2d 162 (1971); *Stewart v. United States,* 395 F.2d 484, 490 (8th Cir.1968); L. Sand, *Modern Federal Jury Instructions* ¶ 54.01, Instruction 54–6; E. Devitt, C. Blackmar & K. O'Malley, *Federal Jury Practice and Instructions,* § 50.13 (4th ed. 1990).

Second, Harper argues that the definition of "stolen" under § 2312 does not apply to the conduct alleged in the Indictment. In this Circuit, Section 2312 has been construed to apply to "larceny by trespass, larceny by trick, embezzlement and obtaining property by false pretenses." *United States v. Long Cove Seafood, Inc.,* 582 F.2d 159, 163 (2d Cir.1978). Here, the Indictment alleges that the co-conspirators obtained cars by, *inter alia,* supplying "false and fraudulent information, such as the name of the party leasing the automobile, the lessee's place of employment, and the lessee's income." Indictment, ¶¶ 4, 5. They are alleged also to have taken active steps to "conceal the fact that the . . . contracts they arranged contained false and fraudulent information." Indictment ¶ 6. The Government has alleged, moreover, that Harper personally misrepresented her identity to obtain a car. *Id.* at ¶ 9(m). We find that, if proven at trial, these allegations will satisfy the definition of "stolen" under § 2312 set forth above.

The decision relied upon by Harper, *United States v. Golden,* 166 F.Supp. 799 (S.D.N.Y.1958), is not to the contrary. There, the Court determined, as fact-finder after trial, *see* 166 F.Supp. at 800, that the Government had failed to demonstrate an intent to defraud the car owner. *Id.* at 801–03. Clearly, then, the appropriate juncture

at which to decide Harper's motion to dismiss ¶ 8 of Count One of the Indictment is the close of the Government's evidence, at which point we can properly determine whether the Government has actually proven the foregoing allegations. Accordingly, Harper's motion is denied without prejudice to renew at the close of the Government's case.

### Paront's Motion to Suppress Statements Made to New Jersey Law Enforcement Officers

Defendant Paront moves to suppress statements he made to New Jersey law enforcement officers subsequent to his arrest on October 22, 1992. The Government has indicated that it intends to introduce only statements that Paront made on or after October 26, 1992, Gov't Mem. at 4–5, the date upon which Paront appeared before a New Jersey state judicial officer in accordance with Rule 3:4–2 of the New Jersey Rules Governing Criminal Practice. *Id,* at 3. The Government avers that a hearing will demonstrate that Paront made a knowing, intelligent, and voluntary waiver of his rights under the Fifth and Sixth Amendments prior to making the statements that the Government seeks to admit. Accordingly, this Court will hold a hearing on this matter. Counsel are directed to contact the Court's chambers to schedule a date for said hearing.

### Paront's Motion to Suppress Items Seized From His Person

Paront moves for suppression of items seized from his briefcase, and personal belongings. The Government, however, has indicated that it does not intend to introduce any of these items. Gov't Mem. at 9. Accordingly, we deny this motion as moot.

### Paront's Motion to Suppress His Post–Arrest Statement to the F.B.I.

Paront requests suppression of the post-arrest statements he made to Special Agents of the Federal Bureau of Investigation on June 22, 1993. The Government indicates that it will not use these statements in its case-in-chief. Gov't Mem. at 10; Clark Aff.

¶ 2. Accordingly, we need not reach this motion.[8]

### CONCLUSION

Defendants' pre-trial motions are denied with the exceptions that: (1) those defendants who requested to join in the motions of other defendants have been permitted to do so; and (2) defense counsel and the Government are directed to contact the Court's Chambers to schedule a date for the hearing on the admissibility of defendant Paront's statements to New Jersey law enforcement officials.

SO ORDERED.

---

**8.** We note that the Government has reserved its right, under *Michigan v. Harvey,* 494 U.S. 344, 345–346, 110 S.Ct. 1176, 1177–1178, 108 L.Ed.2d 293 (1990), to use these statements to impeach any testimony that Paront may give at trial.