**UNITED STATES of America,**

v.

**Joseph C. PALMISANO, Defendant.**

**No. 94–CR–49.**

United States District Court,
D. Vermont.

Aug. 16, 1995.

**68**

Gregory L. Waples, Assistant United States Attorney, Burlington, VT, for U.S.

Kenneth J. Fishman, Peter Charles Horstmann, Bailey, Fishman & Leonard, Boston, MA, for defendant.

### Opinion and Order

GAGLIARDI, Senior District Judge.

The defendant has moved this Court to unseal grand jury records and files, for disclosure of communications, to dismiss the indictment, and/or for sanctions against the government.[1] The essence of this motion is an allegation that the government revealed grand jury information prior to the indictment in violation of Fed.R.Crim.P. 6(e). Because of the alleged prejudicial nature of these disclosures, the defendant seeks to dismiss the indictment, or in the alternative, order the government to provide copies of numerous documents. For the following reasons, the defendant's motion is denied.

### I. Facts

Prior to the inception of this case, Palmisano was a successful bankruptcy attorney residing in Barre, Vermont. The Palmisano name was well known in this relatively small community and surrounding towns, and two of his sons practiced law with him. As a result, much media attention was paid to reports, beginning in December, 1993, that the government was investigating Palmisano for fraudulent practices. On July 14, 1994, a federal grand jury returned a 40–count indictment against Palmisano.[2] The charges

relate to a scheme to defraud his clients and investors solicited by him.

In July, 1993, John Gifford provided the government with copies of several sets of records (computer files, according to the defendant's motion) relating to Palmisano's alleged investment scheme. Gifford was a former client of Palmisano and an alleged victim of Palmisano's investment scheme. In addition, the government claims that Gifford installed computers and developed software for Palmisano, including a program to track the investments. On December 27, 1993, Gifford brought an adversary proceeding against Palmisano in Bankruptcy Court in the District of Vermont (hereinafter the "Gifford action").

According to the defendant's motion, a federal grand jury began investigating Palmisano on or before January 1, 1994 (all dates are 1994 unless otherwise noted). On January 20, various creditors initiated an involuntary bankruptcy proceeding against Palmisano (hereinafter the "bankruptcy action") in the District of Vermont. On February 21, Raymond Obuchowski and his law firm were appointed attorneys for the Interim Trustee in the bankruptcy proceeding. In some papers, Obuchowski is referred to simply as the Interim Trustee.

On March 3, the government moved *ex parte* in the District Court to stay discovery in the Gifford action pending the completion of the grand jury investigation. On that same day, Judge Parker ordered that the government reveal certain grand jury information to the parties in the Gifford action in order to allow them to respond to the government's motion. He also ordered that the information be kept confidential.

The defendant's motion contains a detailed description of the media coverage of this case. The motion focuses on a series of newspaper articles written between February and June (prior to the July indictment). The motion alleges that these articles contain information that originated in the grand jury

---

1. In his accompanying Memorandum of Law, the defendant states that he is not seeking the remedy of sanctions. The Court agrees that sanctions are not appropriate in this case.

2. The grand jury returned a 45–count superseding indictment on January 11, 1995, which contained substantially the same charges.

investigation. Furthermore, the motion alleges that the government investigators disclosed this information to Obuchowski in violation of Fed.R.Crim.P. 6(e), and that Obuchowski then gave this information to the newspaper reporters. In support of this claim, the defendant cites Obuchowski's fee application from the bankruptcy action. His application includes very brief summaries of phone calls made on behalf of the Interim Trustee, including calls between Obuchowski and the authors of the cited newspaper articles, and calls between Obuchowski and the government. The defendant argues that the timing of these phone calls just prior to the publication of the newspaper articles demonstrates that the government has violated Rule 6(e).

As a remedy for the alleged violation, the defendant has moved to dismiss the indictment, both as a punishment for prosecutorial misconduct and as a remedy for the prejudicial publicity. In the alternative, the defendant seeks extensive discovery, including some grand jury material, and an evidentiary hearing.

In response, the government filed affidavits by A.U.S.A. Gregory Waples and F.B.I. Special Agent Charles McGinnis. The government claims that it disclosed grand jury information to Obuchowski only twice. The first disclosure occurred in April, when Judge Parker ordered that Obuchowski could inspect a limited set of financial records that had been obtained by the grand jury. In his affidavit, A.U.S.A. Waples stated that based on conversations with Obuchowski, he believes that by the time of Judge Parker's order, Obuchowski had obtained independently most of the information that was disclosed. The second disclosure occurred in June, when two government agents (an A.U.S.A. and an F.B.I. agent) confirmed that Palmisano's computers, previously replevied by Chittenden Bank, had been subpoenaed and were in the custody of the F.B.I.

## II. Discussion

In his motion, the defendant has made essentially four separate legal claims: three separate theories supporting dismissal of the indictment, and a request in the alternative for disclosing matters before the grand jury pursuant to Rule 6(e).

## A. Dismissal of the Indictment

■ First, the defendant argues that the publicity has prejudiced potential trial jurors. A motion to dismiss the indictment on this ground is easily rejected, given that voir dire should cure any prejudice or alert the Court to the need for other remedies if the jury pool has been saturated with prejudice. "[E]ven publicity partly engendered by the Government would not warrant the extreme remedy of dismissal of an indictment before a voir dire." *U.S. v. Curcio,* 712 F.2d 1532 (2d Cir.1983).

■ Second, the defendant argues that the indictment should be dismissed because the grand jurors were prejudiced by the publicity that occurred prior to the indictment. This claim fails since there is no evidence of such prejudice in this case. *See U.S. v. Torres,* 901 F.2d 205, 232–33 (2nd Cir.), *cert. denied* 498 U.S. 906, 111 S.Ct. 273, 112 L.Ed.2d 229 (1990); *U.S. v. Mitchell,* 372 F.Supp. 1239, 1248 (S.D.N.Y.1973), *appeal dismissed sub nom. Stans v. Gagliardi,* 485 F.2d 1290 (2nd Cir.1973). In addition, the Court notes that the grand jurors were already aware of any information that may have been disclosed. Given the ongoing publicity arising from the bankruptcy and Gifford actions, this is not a case where the alleged disclosures caused an eruption of publicity that otherwise would not have occurred.

■ The defendant's third argument asks the Court to dismiss the indictment as a penalty for prosecutorial misconduct in disclosing the grand jury information, or phrased differently, to presume prejudice from such disclosures. The general doctrine relating to prosecutorial misconduct is set forth in *U.S. v. Fields,* 592 F.2d 638 (2nd Cir.1978), *cert. denied* 442 U.S. 917, 99 S.Ct. 2838, 61 L.Ed.2d 284 (1979). "The extreme sanction of dismissal of an indictment is justified in order to achieve one or both of two objectives: first, to eliminate prejudice to a defendant in a criminal prosecution; second, to 'help to translate the assurances of the

United States Attorneys into consistent performances by their assistants.' " *Id.* at 647 (footnotes omitted). With regard to the first objective, the court explained that "[i]t is only in the rare case, where it is impossible to restore a criminal defendant to the position that he would have occupied vis-a-vis the prosecutor, that the indictment may be dismissed." *Fields, supra,* at 648 (citations omitted). With regard to the second objective, the court explained that "proper regard for the public interest in the prosecution of crimes counsels restraint in dismissing an indictment for deterrence purposes unless the course of official misconduct is a demonstrated, long-standing one. We have approved this extreme sanction only when the pattern of misconduct is widespread or continuous." *Id.* (citations omitted). *See also U.S. v. Artuso,* 618 F.2d 192 (2nd Cir.), *cert. denied* 449 U.S. 861, 101 S.Ct. 164, 66 L.Ed.2d 77 (1980).

In the specific context of a violation of Rule 6(e), the defendant finds his only support for this prophylactic approach in *U.S. v. Sweig,* 316 F.Supp. 1148 (S.D.N.Y.1970). In that case, Judge Frankel noted in dicta that dismissal of an indictment may be a necessary deterrent if the prosecutor helps to create prejudicial pre-indictment publicity, but held that there was no factual basis for such action. *Id.* at 1153–54. Nevertheless, the defendant did not cite, and this Court has not found, any cases where an indictment was dismissed for a violation of Rule 6(e). Many defendants have requested this remedy, but courts consistently find that the evidence does not justify even an evidentiary hearing on this issue, as in *Sweig.* As another example, in *U.S. v. Mitchell, supra,* a New York Times article quoted "sources close to the investigation" in reporting that an indictment was expected soon. The court found that the speculative inference that the government leaked the information did not justify an evidentiary hearing, much less the dismissal of the indictment. *Id.* at 1247–48.

In an attempt to show that his claims are not speculative, the defendant cites *In Re Grand Jury Investigation,* 610 F.2d 202 (5th Cir.1980). In that case, the defendant moved for contempt sanctions upon the government attorneys for alleged disclosures of grand jury information. The court held that an evidentiary hearing was necessary, emphasizing that the remedy sought was less severe than dismissal of the indictment and the fact that no affidavits had been filed by the government denying the disclosures. This holding is distinguishable from the instant case on its facts, but Palmisano points to the court's analysis. In discussing whether the defendant had sufficiently identified the source of the publicity, the court stated that the content and nature of a disclosure may be sufficient to identify its likely source.

The defendant's arguments do not justify dismissing the indictment in this case. Very little, if any, of the information found in the articles cited by the defendant qualifies as a "matter before the grand jury." A detailed reading of the articles reveals that most of the information relates to the bankruptcy and Gifford actions. In addition, some information that could be characterized as grand jury information was attributed to a source independent of the government or Obuchowski.

The defendant emphasizes disclosures that are known to have occurred, but the facts do not support his claim that Obuchowski then disclosed the information to the media. First, Obuchowski was not a party in the Gifford action, in which Judge Parker ordered that the parties receive certain grand jury information. There is no evidence that Obuchowski ever became aware of any information that was disclosed. Second, regarding the April disclosure of financial records to Obuchowski, there is no evidence that any of this information appeared in the cited articles.

Only five pieces of information contained in the articles appear to be related to the grand jury investigation and for which the source is either Obuchowski, the government, or unknown. These will be referred to by the following paragraph numbers, with the information in quotations:

(1) March 14 article—"Obuchowski asked to see any records that banks may have given federal investigators in response to an SEC subpoena." This may not even be grand jury informa-

tion. The source was a bankruptcy court filing of Obuchowski.

(2) March 29 article which contained many details concerning the investment scheme, including names, amounts, interest rates, etc. The source was "Gifford's file."

(3) April 7 article—"In a secret proceeding, Bankruptcy Judge Conrad granted the U.S. Attorney's request that no one question Gifford until his allegations were considered by a federal grand jury." This refers to the government's March 3 *ex parte* motion, described *supra*. A June 15 article, written by the same author, re-reports this information, giving a source of "other court documents."

(4) April 12 article—"A federal grand jury is expected to meet soon to consider securities fraud and other allegations." No source was given.

(5) June 10 article—"A grand jury has been hearing evidence and subpoenaed Palmisano's computers for FBI analysis." The source is "a court document recently filed" by the U.S. Attorney.

Even assuming that all five paragraphs are "matters before the grand jury," the defendant faces the hurdle of showing that the government is the likely source of paragraphs (1) through (4). The proposition that the government leaked the information to Obuchowski in the first instance is complete speculation, aside from a single phone call from Obuchowski to A.U.S.A. Waples. The proposition that Obuchowski then leaked the information to the reporters is supported only by the fact that Obuchowski had recently talked to the author (with the exception of paragraph (1)). However, Obuchowski often talked to reporters about the ongoing bankruptcy proceedings, which is not a matter before the grand jury. Under the caselaw discussed *supra*, the mere fact that Obuchowski conversed with A.U.S.A. Waples and reporters on other matters is an insufficient basis to assume that Obuchowski was the source of any grand jury information reported in the media. This is especially true given the affidavits filed by those involved in the grand jury investigation stating that no

improper disclosures occurred. In addition, there is no indication that the information was known exclusively by the prosecution. Therefore, the nature of the alleged disclosures do not make the government the "likely source" under *In Re Grand Jury Investigation, supra*.

Assuming arguendo that paragraphs (3) and (5) were grand jury information disclosed by the government, this Court finds insufficient prejudice from the disclosure of these two discrete pieces of information to warrant dismissing the indictment. This case is certainly not the abuse of federal investigatory power envisioned in *Sweig, supra*. In addition, any alleged prosecutorial misconduct does not rise to the level of the widespread, continuous pattern required by *Fields, supra*. In the end, the fact remains that almost all of the pre-indictment publicity was generated by the bankruptcy proceedings, and to some degree by the U.S. Attorney, F.B.I., and S.E.C. all confirming that they were investigating the Palmisano matter. Any reports of the grand jury's activities played a minor role in this publicity, and the defendant's motion to dismiss the indictment is denied.

## B. Access to Grand Jury Materials

The fourth argument by the defendant is that he has shown a particularized need for access to matters before the grand jury. Rule 6(e)(3)(C) provides that:

[d]isclosure otherwise prohibited by this rule of matters occurring before the grand jury may also be made—

(i) when so directed by a court preliminarily to or in connection with a judicial proceeding; [or]

(ii) when permitted by a court at the request of the defendant, upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury;....

Courts in the Second Circuit have consistently held that a party seeking disclosure of grand jury matters under Rule 6(e) must show a "particularized need" that outweighs the need to maintain grand jury secrecy. *U.S. v. Moten*, 582 F.2d 654, 662 (2nd Cir.

1978) (citing *Dennis v. U.S.*, 384 U.S. 855, 868, 86 S.Ct. 1840, 1848, 16 L.Ed.2d 973 (1966), and others); *U.S. v. Henry*, 861 F.Supp. 1190, 1193 (S.D.N.Y.1994); *U.S. v. Santoro*, 647 F.Supp. 153, 172 (E.D.N.Y. 1986), *aff'd* 880 F.2d 1319 (2nd Cir.1989). The Supreme Court has elaborated somewhat on the meaning of "particularized need," but the decision still rests on a balancing of interests. In *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 222, 99 S.Ct. 1667, 1674, 60 L.Ed.2d 156 (1979), the Court provided a three-part test: parties seeking disclosure "must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed." The Court went on to explain that this test applies even when the grand jury has concluded its operations because of "the possible effect upon the functioning of future grand juries." *Id.*

 In this case, the defendant has not shown a particularized need for the discovery requests. The defendant provided two justifications for access to grand jury materials. The first is to gather evidence in support of the motion to dismiss the indictment for violations of Rule 6(e). However, the analysis above shows how little material that appeared in the press was possibly leaked from the grand jury. Claims that the government disclosed the information are speculative, and the defendant essentially wishes to explore the grand jury records in the hope of discovering evidence that the government disclosed secret information. Evidence of this sort is unlikely to be present, and in any event, the Court found above that any prejudice from the alleged disclosures is minimal. Therefore, the defendant has no legitimate need for access to grand jury matters because there is no basis for the motion to dismiss the indictment.

The defendant's second justification for access to grand jury materials is to gather evidence in support of his pending motion to suppress evidence. However, his request is conclusory, seeking all documents relating to communications between Gifford and the government, and between Chittenden Bank and the government. The defendant has not made any specific allegations of what evidence he expects to find in those documents, and the breadth of his request belies its speculative nature. The defendant's motion does not show a particularized need for grand jury materials.

In sum, the Court finds that the interest of the defendant in obtaining the information does not outweigh the ongoing interest in the secrecy of grand jury proceedings. *Douglas Oil, supra.* His motion for discovery of matters before the grand jury is denied.

So Ordered.